### CHASE v. UNION & NEW HAVEN TRUST CO.

#### (District Court, D. Connecticut. May 27, 1919.)

1. PATENTS ☞328—INFRINGEMENT—CHAIN LINK CONNECTOR.
   Reissued patent No. 14,361, based on original McLaughlin patent No. 1,166,068, for a chain link connector, limited to a narrow range of equivalents, in view of the prior art, *held* not infringed.

2. PATENTS ☞241—INFRINGEMENT—ESSENTIALS.
   For a device to infringe a patent for an improvement, it must accomplish the same broad result by substantially the same means and in substantially the same way.

In Equity. Suit by Cassius S. Chase against the Union & New Haven Trust Company, trustee of the estate of Henry Horton, for infringement of United States letters patent, reissue No. 14,361. Decree for defendant.

Edward D. Robbins, of New Haven, Conn., and R. E. Babcock, of Buffalo, N. Y., for plaintiff.

John S. Powers and James L. Norris, both of Washington, D. C., for defendant.

MANTON, Circuit Judge. This is a bill in equity charging infringement of letters patent, reissue, No. 14,361, granted to the plain-

tiff by assignment of September 18, 1917, on an application filed April 20, 1917, pursuant to original letters patent No. 1,166,068, granted December 28, 1915, jointly to William H. McLaughlin, as inventor, and Charles Tole, as assignee of a half interest. The Rowe Calk Company, plaintiff's licensee, manufactures nonskid devices. The defendant is the executor and trustee of Henry Horton, deceased. The bill charges that Horton infringed the patent in suit. These devices were manufactured by the Arrow Grip Manufacturing Company, a New York corporation doing business in that state. It is the real defendant in interest, and has openly entered into the case and defended this litigation.

The patent in suit is an improvement for a chain link connector which was sold in connection with a completed device for attachment to wheels of motor trucks to prevent skidding. Claims 4 and 5 are in issue and are as follows:

"4. A device to connect the links of a chain, consisting of a part having two hooks presented toward each other, leaving an open space between their adjacent ends and adapted to receive strain or pull in opposite directions, in combination with a guard pivotally connected to said part at one end and, in closed position, guarding said open space and extending down between the adjacent ends of the hooks, to prevent the passage of an endless article from one of said hooks to the other, said guard being provided with a pair of resilient plates to grip between them a portion of said part for the purpose of holding said guard in closed position.

"5. A device to connect the links of a chain, consisting of a part having two hooks presented substantially toward each other, leaving an open space between their ends and adapted to receive chain links, said hooks being connected by a body portion in combination with a guard permanently mounted on said part, and, in closed position, guarding said open space and extending between the adjacent ends of said hooks toward said body portion, to prevent the passage of an endless article from one of said hooks to the other, said guard being provided with a pair of resilient plates to engage said part, to hold said guard in closed position."

The principal defenses interposed are (a) that defendant's device does not infringe; (b) that claims in issue are anticipated by the prior art; and (c) that the claims are void because of defendant's intervening rights.

[1] Both the original and reissue patents provided in the specifications that the invention related to a chain link connector of the snap hook type, and point out as one of its objects to provide a strong solid section with a pivoted sheet metal guard, to keep the respective end links of the two ends of the chain in the respective hooks of the connector, thus guarding against their being superposed and by twisting move the guard on its pivot. It is evident that the essential characteristic of the McLaughlin device is that there must be a snap hook, and there is the characteristic that, but for the particular construction of the guard, a chain link might pass from one hook to another. The patentee calls his device a chain link connector. The plaintiffs' device might well be called a snap link. The device as shown in the drawings is the open link, which is designed to be held in suspension between the adjoining chain links and as a snap hook feature of the movable guard normally bridging the terminals of the hooks. The guard used, which undoubtedly is the only improvement, when in place and locked,

will prevent the passage of a chain from one hook to the other. As shown in the drawings, the characteristic features indicate an open link which is designed to be held in suspension between the adjoining chain links having the snap hook feature of a movable guard normally bridging the terminals of the hook, the guard being pivoted on one of the hooks. The patentee regarded the suspended characteristic of his snap link as an essential feature. The specification describes and suggests only one way of operating the connector with the adjacent links. It says:

"These two links slipping together over the free end of the connector, the link being slipped over the central dividing point between the two hooks and coming to a stop in the eye against the inner edge of the end hook or section of the connector, and the link retaining its position in the other eye, bearing against the inner edge of the end hook or section of the connector."

To operate the connector in the manner suggested by the specifications, it is indispensable that the connector shall have the suspended characteristic, thus the necessity of preventing either link from passing from the hook with which it is initially engaged to the other hook. This improvement is directed to a snap link of the floating or suspended type, for the purpose of overcoming the disadvantage of a chain link passing from one end of the closed snap to the other. This bar or guard, pivoted to one of the hooks, bridges the hook terminals and closes the link as an entirety and a projection, extending inwardly and bridging the bar and the central portion of the link, functions to occlude the hooks from one another. It functions as a locking means for the closure.

The manufacturer, using this device, uses two of them in connection with the construction of his nonskid device. They act to hold the chains passed under the felly of the wheel upon a securely placed fastener to the spoke of the wheel. But in my opinion, the chain connector covered by the reissue patent, as used by the Rowe Calk Company, is but a part of their completed nonskid device.

The defendant, on the other hand, uses a completed nonskid device. It is used as such for automobile trucks. The device is not used as making part of the chain, which may be used for purposes other than nonskid devices. I think it is fundamentally different in its nature from the device of the patent in suit. It is intended and used in a limited field. The object of defendant's device is to provide a clamp applicable to a wheel spoke having an open link carried thereby and means readily movable in relation to the ends of the links, to prevent accidental disengagement of the cross or tire chain links therefrom, and whereby, also, a cross or tire chain may be quickly and practically applied over a tire and secured in operative position in an expeditious manner. The link is the part of the clamp applicable to the spoke, and the guard is provided, which is not pivoted upon the link itself, but upon the clamp, and operates in a longitudinal way between the ends of the link, and there securely holds the ends of the chain, which are wrapped around the felly, and thus prevents the accidental disengagement of the chain links. The guard, mounted upon the fixed or chanored part of the center of the wheel, greatly facilitates in reduc-

ing the time required for removal or replacement of the cross-chains. The clamp is held firmly to the spoke of the wheel, which, together with the pressure upon the felly, takes the stress resulting from the pull of the chain while in operation. It is a much stronger and more durable device than that placed on the market by the plaintiff. The defendant's device could not be used as a chain connector of general utility, such as McLaughlin's chain connector. In defendant's device, the link passage or opening is closed by one guard, which is mounted on the clamp for movement in the common plane of the spokes, and the guard, when closed, securely engages with a projection provided on the flange or web which carries the hooks. It will be noted that the plaintiff has two hooks. It requires two operations and two guards, whereas in defendant's device one guard and therefore one operation, alone is necessary to operate the device.

In claim 4 the guard is defined as extending down between the adjacent ends of the hooks to prevent the passage of an endless article from one of said hooks to the other, and in claim 5 as extending between adjacent ends of said hooks toward said body portion to prevent the passage of an endless article from one of said hooks to the other. In defendant's device there is no such danger of the passage of links from one hook to the other, the danger being the possibility of entire disengagement of the chain with the hook, and to prevent this the guard is used.

The defendant's device does not, therefore, exercise the function of preventing the chain link from passing from one hook to the other. It is not pivoted to a part having two hooks. In plaintiff's device the guard is necessary to prevent the endless article from passing from one hook to another; whereas in defendant's device the guard is used. The defendant's device does not, therefore, exercise the function of preventing the chain link from passing from one hook to another, where in defendant's device the guard is used to close the connector, so as to prevent disengagement of the links.

Having in mind the diminishing space between the spokes as they approach the hub and the closeness of the spokes in the wheels of motor trucks, it is preferable to have an attachment as compact as possible, and to have the guard so located as to make it easy of access, so that it may be opened. The defendant's device requires but one operation, the opening of one guard, and there is ample room or clearance for its opening movement by reason of its location. The features of the defendant's device, by virtue of which a link cannot pass from one hook to the other, are features which are intimately related to the character of the device of the nonskid appliance, and are but incidental to the means for preventing disengagement of the chain from the hooks. The defendant's device is devoid of the suspended or floating relation contemplated by the McLaughlin patent.

In McLaughlin's device, as stated above, the guard is pivoted to a part of what is referred to as two hooks; whereas in defendant's device the closure is pivoted to the clamp, which is an element quite distinct from a part having two hooks and involving an arrangement not compatible with the snap hook type. The plaintiff must be limited

to a connector which is of the suspended connector type, having for its object preventing a chain link from passing from one hook to the other, and one in which the guard is pivoted upon one of the hooks.

[2] In view of the prior art and use, particularly of the Manson patent and the Weed connector, the plaintiff's improvement of a chain link connector must be limited to a narrow range of equivalents. The defendant's device lacks the essential characteristics of the claims of the plaintiff's device, and, in my opinion, does not infringe. It is not enough to support the claim of infringement that the alleged infringing device shall accomplish the same broad result. It is necessary that it accomplish that result by substantially the same means and in substantially the same way. There must be identity of means and identity of operation, which must be combined with identity of result to constitute infringement. Kokomo, etc., v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689. The defendant's device does not perform the same service or produce the same result in substantially the same way. Werner v. King, 96 U. S. 218, 24 L. Ed. 613.

Decree for defendant.